IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**AUTO-OWNERS INSURANCE COMPANY,**

**Plaintiff,**

**v.**

**JOHN BECK, JOYCE BECK, STEPHEN BECK, AND LISA BECK,**

**Defendants.**                                           No. 16-cv-555-DRH-RJD

<u>MEMORANDUM AND ORDER</u>

**HERNDON, District Judge:**

## I.  INTRODUCTION

Now before the Court are cross-motions for summary judgment filed by plaintiff Auto-Owners Insurance Company (hereinafter "Auto-Owners") (Doc. 21) and defendants John Beck, Joyce Beck, Lisa Beck, and Stephen Beck (Doc. 31). Auto-Owners also filed a motion for judgment on the pleadings (Doc. 21). Responses were filed opposing all motions (Docs. 28 & 39) and Auto-Owners filed a reply addressing defendants' response to its motions for partial summary judgment and for judgment on the pleadings (Doc. 38). For the following reasons, plaintiff's motion for summary judgment is **GRANTED**.

## II.  BACKGROUND

This matter arises out of a traffic accident during which defendants John Beck, Joyce Beck, Lisa Beck, and Stephen Beck were injured. On December 15, 2014, defendants collided with a driver insured by Allstate. That driver, found to

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**AUTO-OWNERS INSURANCE COMPANY,**

**Plaintiff,**

**v.**

**JOHN BECK, JOYCE BECK, STEPHEN BECK, AND LISA BECK,**

**Defendants.**                                           No. 16-cv-555-DRH-RJD

<u>MEMORANDUM AND ORDER</u>

**HERNDON, District Judge:**

## I.  INTRODUCTION

Now before the Court are cross-motions for summary judgment filed by plaintiff Auto-Owners Insurance Company (hereinafter "Auto-Owners") (Doc. 21) and defendants John Beck, Joyce Beck, Lisa Beck, and Stephen Beck (Doc. 31). Auto-Owners also filed a motion for judgment on the pleadings (Doc. 21). Responses were filed opposing all motions (Docs. 28 & 39) and Auto-Owners filed a reply addressing defendants' response to its motions for partial summary judgment and for judgment on the pleadings (Doc. 38). For the following reasons, plaintiff's motion for summary judgment is **GRANTED**.

## II.  BACKGROUND

This matter arises out of a traffic accident during which defendants John Beck, Joyce Beck, Lisa Beck, and Stephen Beck were injured. On December 15, 2014, defendants collided with a driver insured by Allstate. That driver, found to

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**AUTO-OWNERS INSURANCE COMPANY,**

**Plaintiff,**

**v.**

**JOHN BECK, JOYCE BECK, STEPHEN BECK, AND LISA BECK,**

**Defendants.**                                           No. 16-cv-555-DRH-RJD

<u>MEMORANDUM AND ORDER</u>

**HERNDON, District Judge:**

## I.  INTRODUCTION

Now before the Court are cross-motions for summary judgment filed by plaintiff Auto-Owners Insurance Company (hereinafter "Auto-Owners") (Doc. 21) and defendants John Beck, Joyce Beck, Lisa Beck, and Stephen Beck (Doc. 31). Auto-Owners also filed a motion for judgment on the pleadings (Doc. 21). Responses were filed opposing all motions (Docs. 28 & 39) and Auto-Owners filed a reply addressing defendants' response to its motions for partial summary judgment and for judgment on the pleadings (Doc. 38). For the following reasons, plaintiff's motion for summary judgment is **GRANTED**.

## II.  BACKGROUND

This matter arises out of a traffic accident during which defendants John Beck, Joyce Beck, Lisa Beck, and Stephen Beck were injured. On December 15, 2014, defendants collided with a driver insured by Allstate. That driver, found to

be at fault, had a liability policy with limits of $50,000 per person and $100,000 per occurrence. As a result of the accident, defendants made a claim for damages against the at-fault driver for the $100,000 policy limit.

Defendants also made a claim seeking underinsured motorist benefits under their policy with Auto-Owners Insurance Company. Defendants allege that Auto-Owners underinsured motorist coverage (UIM) provided them with a $300,000 per person and $300,000 per occurrence limit (Doc. 1-1). On January 16, 2016, defendants informed Auto-Owners that they received an offer from Allstate for the full $100,000 policy limit.[1]

On May 17, 2016, Plaintiff Auto-Owners Insurance Company filed a two count complaint seeking declaratory relief and interpleader against John Beck, Joyce Beck, Stephen Beck and Lisa Beck arising out of the aforementioned auto accident (Doc. 1). Defendants filed their answers (Docs. 14&15), and following discovery, plaintiff filed the pending motion for partial summary judgment (Doc. 21) and motion for judgment on the pleadings (Doc. 23). Thereafter, defendants filed their pending motion for summary judgment (Doc. 31), in which they allege that on May 24, 2017, defendants each separately settled with Allstate on behalf of the at-fault driver for combined total $100,000. The allocation of the settlement funds was $25,000 to Joyce Beck; $25,000 to John Beck; $25,000 to Stephen Beck; and $25,000 to Lisa Beck. The dispute at issue in this case involves the terms of the Auto-Owners underinsured motorist coverage under policy number

---

[1] The Allstate settlement was not finalized until May 24, 2017, when each defendant settled with Allstate for a combined $100,000.

96-872-326-00, and whether Auto-Owners is entitled to the $100,000 setoff based on the settlement proceeds received from Allstate. The Court now turns to the pending cross-motions for summary judgment.

### III. LEGAL STANDARD

Summary judgment is proper when the pleadings, discovery, and disclosures establish that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Winsley v. Cook Cnty.*, 563 F.3d 598, 602–03 (7th Cir. 2009); Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). All reasonable inferences are drawn in favor of the nonmovant and all factual disputes are resolved in favor of the nonmovant. *Scott v. Harris*, 550 U.S. 372 (2007); *Fischer v. Avanade, Inc.*, 519 F.3d 393, 401 (7th Cir. 2008). The movant bears the burden of establishing the absence of fact issues and entitlement to judgment as a matter of law. *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex*, 477 U.S. at 323). The same standard applies to cross-motions for summary judgment. *Laskin v. Siegel*, 728 F.3d 731, 734 (7th Cir. 2013). That is, the Court construes the facts and inferences in favor of the party against whom the motion under consideration is made. *See, e.g., Tompkins v. Central Laborers' Pension Fund*, 712 F.3d 995, 999 (7th Cir. 2013). But the district court may not resolve issues of credibility when deciding a summary judgment motion: "Those are issues for a jury at trial, not a court on summary judgment." *Williams v. City of Chi.*, 733 F.3d 749, 752 (7th Cir. 2013).

# IV. ANALYSIS

### a. The Policy

The policy issued by Auto-Owners to defendants John and Joyce Beck provides in pertinent part as follows:

| COVERAGES | LIMITS |
|---|---|
| Combined Liability | $300,000 occurrence |
| Uninsured and Underinsured Motorist | $300,000 person/$300,000 occurrence |
| Uninsured Motorist | $15,000 occurrence |
| Medical Payments | $10,000 person |

The limit of liability for the coverages listed may not be added to the limits for the same or similar coverage applying to other automobiles insured by this policy to determine the amount of coverage available for any one occurrence regardless of the number of: (1) automobiles shown in the Declarations; (2) premiums charged in the Declarations or premiums paid; (3) claims presented or suits brought; (4) persons injured; or (5) automobiles involved in the occurrence.

\*\*\*

**Illinois**
**UNDERINSURED MOTORIST COVERAGE**
**Automobile Policy**

1. **DEFINITIONS**
    b. **Settlement agreement** means an agreement between the injured person and us:
    - **(1)** that the injured person is legally entitled to recover damages for **bodily injury** from the owner or operator of the **underinsured automobile**;
    - **(2)** to the amount of such damages, only if the amount of such damages is agreed to without arbitration.

    The **settlement agreement** is binding on the injured person and **us** regardless of any future judgment or settlement between the injured person and the owner or operator of the underinsured automobile.

    c. **Underinsured automobile** means as **automobile** to which a **bodily injury** liability bond or liability insurance policy applies at the time of the **occurrence:**
    - **(1)** with limits of liability at least equal to or greater than the limits required by the Illinois Safety Responsibility Act; and

  **(2)** such limits of liability are less than the amount of damages the injured person is legally entitled to recover for **bodily injury.**

***

## 4. LIMIT OF LIABILITY

**a.** The limit of our liability for Underinsured Motorist Coverage of any one **occurrence** shall be as follows:

 (1) Our payment to any one injured person for any one occurrence shall not exceed the smallest of the following:

  (a) The "each person" limit of liability stated in the Declarations for Underinsured Motorist coverage which is the most **we** shall pay for all compensatory damages, including but not limited to loss of consortium, because of or arising out of **bodily injury** to such injured person; or

  (b) The amount of compensatory damage, including but not limited to loss of consortium, because of or arising out of the **bodily injury** to such injured person, that are not recovered from the liability bond(s) or liability insurance policy(s) applying to the owner and operator of the **underinsured automobile** because such bond(s) or policy(s) has been exhausted by payment of judgments or settlements.

 (2) Subject to the provisions of **4a.(1)** above, **our** payment to two or more injured persons for any one **occurrence** shall not exceed the smallest of the following:

  (a) The "each occurrence" limit of liability stated in the Declarations for Underinsured Motorist coverage which is the most **we** will pay for all compensatory damages, including but not limited to loss of consortium, because of or arising out of all **bodily injury** to two or more such injured persons; or

  (b) The amount of compensatory damage, including but not limited to loss of consortium, because of or arising out of the **bodily injury** to two or more injured persons that are not recovered from the liability bond(s) or liability insurance policy(s) applying to the owner and operator of the **underinsured automobile** because such bond(s) or policy(s) has been exhausted by payment of judgments or settlements.

 (3) In the event of a **settlement agreement**, our payment under **4.a.(1)** or **4.a.(2)** above shall not exceed the amount by which

the limits of liability stated in the Declarations for Underinsured Motorist coverage exceed the Limits of bodily injury liability bond or Liability insurance policy of the owner or operator of the **underinsured automobile**.

(4) In the event there is not a **settlement agreement**, **our** payment under **4.a.(1) or 4.a.(2)** above shall not exceed the limits of liability stated in the Declarations for Underinsured Motorist coverage, less those amounts actually recovered under the applicable **bodily injury** liability bond or liability insurance policy or other security maintained for the **underinsured automobile**.

b. The limit of our liability is not increased because of the number of:
(1) **automobiles** shown or premiums charged in the Declarations;
(2) claims made or **suits** brought;
(3) persons injured; or
(4) **automobiles** involved in the **occurrence**.

c. The amount **we** pay will be reduced by any amounts paid or payable for the same bodily injury:
(1) under **SECTION II-LIABILITY COVERAGE** of the policy; or
(2) under any workers compensation or similar law; or
(3) by or on behalf of any person or organization who may be legally responsible for the **bodily injury**.

(Doc. 1-1).[2]

## b. Discussion

In this case, a dispute has arisen between the parties regarding the amount of underinsured motorist coverage available to defendants under their Auto-Owners policy. The dispute centers on whether Auto-Owners' policy language entitles defendants to a combined-total of $300,000 or $200,000 in coverage.

Because this is a diversity case, Illinois law applies. Illinois law treats the interpretation of an insurance policy as a question of law that the Court may resolve summarily. *See Connecticut Indem. Co. v. DER Travel Service, Inc.*, 328

---

[2] The parties are in agreement that the UIM policy, drafted by plaintiff Auto-Owners and excerpted above, was in effect at the time of the defendants' accident.

F.3d 347, 349 (7th Cir. 2003) (citing *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1077 (Ill. 1993)). The Seventh Circuit summarized Illinois law pertaining to the interpretation of insurance policies as follows:

> In Illinois, insurance policies are contracts; the general rules governing the interpretation and construction of contracts govern the interpretation and construction of insurance policies. Illinois courts aim to ascertain and give effect to the intention of the parties, as expressed in the policy language, so long as doing so does not contravene public policy. In doing so, they read the policy as a whole and consider the type of insurance purchased, the risks involved, and the overall purpose of the contract. If the policy language is unambiguous, courts apply it as written. Policy terms that limit an insurer's liability are liberally construed in favor of coverage, but only when they are ambiguous, or susceptible to more than one reasonable interpretation.

*Clarendon Nat'l Ins. Co. v. Medina*, 645 F.3d 928, 933 (7th Cir.2011) (citations omitted). Although ambiguities are construed in the insured's favor, "a court will not search for ambiguity where there is none." *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 223 Ill.2d 352, 307 Ill.Dec. 653, 860 N.E.2d 307, 314 (Ill.2006); *see also Native Am. Arts, Inc. v. Hartford Cas. Ins. Co.*, 435 F.3d 729, 732 (7th Cir.2006). Further, *Menke v. Country Mutual Insurance Co.* (1980), 78 Ill.2d 420, 426, 36 Ill.Dec. 698, 401 N.E.2d 539, notes that public policy does not require the Court to invalidate clearly written policy language simply to avoid disappointment to the insured. In the event of an ambiguity, the policy's terms should be construed strictly against the drafter (here, Auto-Owners). *Am. States Ins. Co. v. Koloms*, 177 Ill.2d 473, 227 Ill.Dec. 149, 687 N.E.2d 72, 75 (1997).. However, a policy will be considered ambiguous only where its language is subject

to more than one reasonable interpretation—we "will not strain to find an ambiguity where none exists." *Hobbs*, 291 Ill.Dec. 269, 823 N.E.2d at 564. Considered in the context of the policy as a whole, and applying Illinois law, the Court concludes that the language at issue addressing limits of liability is susceptible to only one reasonable interpretation.

In Auto-Owners' motion for summary judgment and response to defendants' motion for summary judgment (Docs 21. & 39), Auto-Owners takes the position that in light of the $100,000 settlement with Allstate under the at-fault driver's liability policy, the maximum combined payout for all four defendants under its UIM policy is now $200,000.[3] The parties agree that the underinsured motorist coverage limits are $300,000 per person and $300,000 per occurrence, citing the declarations page for the policy (Doc. 22-1). Auto-Owners argues that, in the event of a settlement agreement, the policy clearly and unambiguously provides for a setoff against the UIM limits equal to the limits of the at-fault motorist's liability policy. Because each defendant settled with the at-fault driver for a combined $100,000, Auto-Owners asserts that the maximum owed to defendants under the underinsured motorist coverage is $200,000. Auto-Owners goes on to argue that the $200,000 coverage limit places defendants in the same position as they would have been in, had the at-fault driver carried the same limits as their underinsured motorist coverage. See *Berrey v. Travelers Indem. Co. of Am.*, 770 F.3d 591, 594 (7th Cir. 2014)(citing *Phoenix Ins. Co. v.*

---

[3] Although originally disputed, defendants' motion for summary judgment notes that a settlement was in fact reached with the at-fault motorist's insurance company for a combined total of $100,000.

*Rosen*, 242 Ill.2d 48, 350 Ill.Dec. 847, 949 N.E.2d 639, 646 (2011)("The Illinois Supreme Court has noted that the underlying purpose of underinsured motorist coverage is to "place the insured in the same position he would have occupied if the tortfeasor had carried adequate insurance.").

Defendants, in turn, argue that each defendant asserts a claim for underinsured motorist coverage under the policy at issue, and they are entitled to a combined total of $300,000 (Doc. 31). Defendants contend that they are entitled to a maximum combined payout of $300,000 because that defendant shall enter into a separate settlement agreement with Auto-Owners, and none of the four individual settlements will exceed the monetary limitations set by Section 4.a.(3). Although the defendants concede that the language contained in the declarations page and policy controls, and that this Court's interpretation of said language will resolve the case, this dispute arises over the language contained in the Auto-Owners policy, specifically with regard to the terms of the policy's underinsured motorist coverage, and whether the policy language entitles defendants to a combined-total of $300,000 or $200,000.

In cases involving UIM coverage, the purpose of underinsured coverage is "to place the insured in the same position he would have occupied if the tortfeasor had carried adequate insurance"; such coverage is "designed to offer insurance to 'fill the gap' between the claim and the tortfeasor's insurance," and as a result is "obviously not intended to allow the insured to recover amounts from the insurer over and above the coverage provided by the underinsured motorist policy."

*Sulser v. Country Mutual Insurance Co.*, 147 Ill.2d 548, 169 Ill.Dec. 254, 591 N.E.2d 427, 429-30 (Ill.1992). Therefore, had the defendants been injured by a motorist who carried insurance equal to defendants' underinsured motorist coverage, they would have received a total of $300,000. *Sulser* notes that the at-fault driver's insurance was not intended to allow the insured to recover more than the amount of coverage provided under his policy's underinsured motorist coverage. Significantly, *Sulser* offered the following example to illustrate the applicability of a setoff provision:

> "Under a $100,000 policy, the policyholder is assured of compensation for his injuries in the amount of $100,000. However, the policyholder is not necessarily assured of receiving the total $100,000 from the insurer, but only of receiving that portion of the $100,000 which is not recovered from third parties."

*Sulser*, 147 Ill.2d at 556.

The declarations page of the Auto-Owners policy indicates that the policy limits for underinsured motorist coverage are "$300,000 person/$300,000 occurrence." The limit of liability provision states that listed policy limits are the most Auto-Owners will pay regardless of the number of vehicles shown in the declarations, claims, or suits brought, persons injured, or vehicles involved in the occurrence. Under Section 4.a.(2), the Auto-Owners policy clearly and unambiguously provides policy limits of $300,000 per occurrence. Section 4.a.(2) applies to instances where there are two or more persons injured by one occurrence, as is the case here. [4] In the event of a settlement agreement, section

---

[4] The $300,000 per accident limit (Section 4.a.(2)(a)) is smaller than the amount of compensatory damage not recovered)(Section 4.a.(2)(b)) from the Allstate policy ($2,550,000).

4.a.(3) includes a setoff provision, thus reducing the maximum coverage amount by the amounts paid on behalf of the tortfeasor in the settlement.

Defendants argue that the limitation set forth by 4.a.(3) refers to "a settlement agreement" as in, any *single* settlement agreement with any *single* individual claimant. Defendants contend that Auto-Owners cannot resolve the four claims at issue in this case with a single settlement agreement, and therefore, must resolve the four claims with four separate settlement agreements. Defendants go on to note that none of the four proposed individual settlement agreements contemplated ($70,000; $190,000; $20,000; $20,000) exceed the $200,000 limitation set forth in 4.a(3), thus allowing each to recover their proposed amounts totaling $300,000. However, defendants' argument fails to take into account that once the setoff applies, the limits are reduced. Defendants argue that because each of the four claims, taken individually, do not exceed $200,000 (representing the reduction for the at fault motorist's limits), then defendants are entitled to collect up to $300,000 from Auto-Owners . However, this argument fails under the policy and under Illinois law. Defendants fail to consider that the policy limit does not increase based on the number of claims made under the terms of the policy.

As mentioned above, four defendants were injured by a single underinsured motorist during one occurrence, thus triggering the applicability of Section 4.a.(2). The underinsured motorist's insurer paid its policy limits of $100,000. Thus, the policy limit of $300,000 per accident under Section 4.a.(2) is reduced by the

$100,000 settlement with Allstate under Section 4.a.(3) of the policy. Applying the setoff provision in Section 4.a.(3) to the facts of this case results in the defendants receiving $100,000 from the underinsured motorist's insurer and $200,000 from their underinsured motorist coverage for a total of $300,000. See, e.g., *Sulser*, 147 Ill.2d at 556; *Obenland v. Econ. Fire & Cas. Co.*, 234 Ill. App. 3d 99, 111, 599 N.E.2d 999, 1006 (1992), aff'd, 623 N.E.2d 748 (Ill. 1993). Defendants have no basis in law or logic to demand an extra $100,000 from Auto-Owners. UIM coverage is intended only to assure compensation for an insured's injuries in an amount equal to his or her policy limit for the coverage. *Sulser*, 147 Ill.2d at 556 It is "not intended to allow the insured to recover amounts from the insurer over and above the coverage provided by the underinsured motorist policy." *Id*.

Here, there is no dispute that defendants recovered $100,000 from Allstate. Given that there is a settlement agreement under the policy definitions, the limits must be reduced by the at-fault driver's liability limit ($100,000). Under these circumstances, the defendants are not entitled to recover more than $200,000 based upon the clear language of the Auto-Owners insurance policy and the relevant case law. Therefore, the Court grants plaintiff's motion for partial summary judgment.

### a. **CONCLUSION**

For the reasons stated above, the Court **GRANTS** plaintiff's motion for partial summary judgment (Doc. 21) and **DENIES** defendants' motion for

summary judgment (Doc. 31). Further, plaintiff's motion for judgment on the pleadings (Doc. 23) is **DENIED as moot**.

The Court hereby **DECLARES** that Auto-Owners Insurance Company Policy number 96-872-326-00 affords a maximum of $200,000 UIM coverage, to defendants for the automobile collision alleged to have occurred on December 15, 2014, following the $100,000 setoff based on the proceeds received from Allstate, thus satisfying Auto-Owners' obligations under the policy.

In light of the varied medical costs and economic losses incurred by each defendant, defendants are **DIRECTED** to jointly submit a proposed distribution of the deposited $200,000 to the Court no later than March 27, 2018, after which time, judgment will be entered.

**IT IS SO ORDERED.**

Judge Herndon
2018.03.07
17:29:19 -06'00'

**United States District Judge**